AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>THE CELLULAR TELEPHONE<br>ASSIGNED CALL NUMBER<br>513-485-5462 (AT&T) | )<br>)<br>)  Case No. 1:17MJ-601<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

A CELLULAR TELEPHONE ASSIGNED CALL NUMBER 513-485-5462 (AT&T)

located in the  Southern  District of  Ohio , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENTS A AND B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841 and 846 | Conspiracy to Possess and Possession of a Controlled Substance with the Intent to Distribute |

The application is based on these facts:

See Attached Affidavit

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of  30  days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Tyler D. Field, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  8/9/17 

_____
*Judge's signature*

City and state:  Cincinnati, Ohio 
Hon. Karen L. Litkovitz, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 513-485-5462 (AT&T) | CASE NO. <u>UNDER SEAL</u> |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Tyler D. Field, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **513-485-5462 (Subject Telephone)**, whose service provider is AT&T, a wireless provider headquartered at 11760 U.S. Highway 1, North Palm Beach, Florida. The targeted cell phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. I am a Special Agent ("SA") of the Drug Enforcement Administration ("DEA") and have been so employed since March 2016. I also serve as a U.S. Army Military Police Captain in the Massachusetts Army National Guard and have done so for over fifteen years. Prior to being employed with the DEA, I was employed as a police officer for the Town of Bridgewater, Massachusetts for over three years. I have graduated from the U.S. Army Military Police School, Plymouth Police Academy, and DEA Basic Agent Academy. During these courses, I received training in the investigation of offenses involving controlled substances. As a Special Agent of the DEA, my duties and responsibilities have included conducting criminal investigations for

violations of federal law, particularly those found in Title 21 and Title 18 of the United States Code. As a DEA agent, I have participated in approximately fifteen criminal investigations seeking evidence of violations of the Federal Controlled Substances Act (Title 21 of the United States Code).

3. I am currently assigned to the Cincinnati Resident Office of the DEA. I have received specialized training from the DEA, including the 18-week Basic Agent Training course. This training focused on methods of unlawful drug trafficking; the identification of controlled substances; surveillance; undercover operations; confidential source management; the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and, the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 United States Code, Sections 841(a)(1) and 846 have been committed, are being committed, and will be committed by Keysean DICKEY and other as-yet unknown individuals. I believe there is probable cause that the **Subject Telephone** is being used in furtherance of the aforementioned crimes and that there is also probable cause to believe that the location of the **Subject Telephone** will constitute evidence of those criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

## THE RELEVANT FACTS

6.  On July 20, 2017, a Grand Jury for the United States District Court in the Southern District of Ohio returned an indictment for Keysean DICKEY and his co-conspirators. Pursuant to the indictment, an arrest warrant was issued for DICKEY.

7.  On May 30, 2017 at approximately 6:45 p.m., the Honorable Susan J. Dlott, United States District Judge in the Southern District of Ohio, signed an order under case 1:17MC-20 authorizing the interception of wire and electronic communications over telephone number 513-238-1049 (hereinafter referred to as DICKEY's telephone), a telephone used by Keysean DICKEY.

8.  On June 6, 2017 at approximately 3:49 p.m., DICKEY placed an intercepted telephone call to Diarra FREEMAN on 513-884-5079. During the telephone call, DICKEY told FREEMAN he was in Bond Hill and was about to "run on Hopple get paid…" FREEMAN asked DICKEY where to meet and DICKEY replied "I'm about to run on Hopple and drop this shit off." Based on my training, experience, discussions with other law enforcement officers/agents, I believe that DICKEY was telling FREEMAN that DICKEY had to meet with one of DICKEY's fentanyl dealers on Hopple Street to deliver fentanyl and pick up money earned through the distribution of fentanyl.

9.  On June 17, 2017 at approximately 3:18 p.m., DICKEY placed an intercepted telephone call to FREEMAN on 513-884-5079. During the call, DICKEY asked FREEMAN if FREEMAN was able to get a rental. FREEMAN responded that she just got off the phone with "Bianca" and was waiting to hear back. Approximately thirty minutes later, FREEMAN placed on intercepted telephone call using 513-884-5079 to DICKEY. During the call, FREEMAN told

3

DICKEY that "they're" about to go to the airport. FREEMAN asked DICKEY what kind of car, and DICKEY told her an SUV. FREEMAN replied that "they're" heading to the airport now.

10. Based on my training, experience, and discussions with other law enforcement officers/agents, I believe that DICKEY was asking FREEMAN if she was able to rent a car for DICKEY. I believe that FREEMAN had called an unidentified female named "Bianca" to rent the vehicle for DICKEY in "Bianca's" name. During the second call when FREEMAN said "they're" about to go to the airport, I believe that FREEMAN was telling DICKEY that FREEMAN and "Bianca" were going to a rental car agency at the airport to rent a car for DICKEY. Based on my knowledge that DICKEY has used other females to rent vehicles to facilitate DICKEY's fentanyl distribution conspiracy, I believe that FREEMAN and "Bianca" were going to rent a vehicle for DICKEY in furtherance of DICKEY's fentanyl distribution conspiracy.

11. On June 19, 2017 at approximately 11:39 p.m., subscriber "William MARTIN" placed an intercepted telephone call using 513-302-4005 to DICKEY using DICKEY's telephone. During the telephone call, DICKEY told "MARTIN" to tell an unidentified male to pull up to "45" and the give "her" the money. DICKEY then asked "MARTIN" how much it was. Based on my training, experience, and discussions with other law enforcement officers/agents, I believe that DICKEY and "MARTIN" were discussing the delivery of drug proceeds to 4502 Williamsburg Road, a location determined to be a stash house for the DICKEY DTO.

12. On June 26, 2017 agents executed nine search warrants at locations believed to be used by the DICKEY DTO to store drug proceeds, firearms, and fentanyl, to include 4502 Williamsburg Road. Agents also attempted to place DICKEY and his co-conspirators under arrest, however agents learned that DICKEY was not at any of the locations being searched. Later that day, agents determined that DICKEY stopped using DICKEY's Telephone.

13. On August 8, 2017, I requested subscriber and toll records for frequent contacts of DICKEY's Telephone. Through call record analysis, I learned that at least six of these contacts began calling **513-485-5462** (the **Subject Telephone**) starting on July 25, 2017. For example, on August 3, 2017, "MARTIN" using 513-302-4005 communicated with the **Subject Telephone** at least once and FREEMAN, using 513-884-5079, communicated with the **Subject Telephone** at least 55 times. Based on my training, experience, discussions with other law enforcement officers/agents, my knowledge that DICKEY turned off and stopped using DICKEY's telephone on June 26, 2017 following the execution of search warrants of locations used by the DICKEY DTO and the arrest of DICKEY's co-conspirators, and my knowledge that at least six of the more frequent contacts of DICKEY's Telephone began calling the **Subject Telephone**, I believe that DICKEY has likely simply shifted his narcotics trafficking activities to the **Subject Telephone**, and that either DICKEY or an associate of DICKEY's is using the **Subject Telephone** to commit violations of Title 21 of the United States Code.

14. Based on my training, experience, discussions with other law enforcement officers/agents, and my belief that the conversations in the intercepted telephone calls between DICKEY and "MARTIN" and DICKEY and FREEMAN were in furtherance of the DTO's conspiracy to distribute fentanyl, I believe that the communications from "MARTIN" and FREEMAN to the **Subject Telephone** were also in furtherance of the DTO's conspiracy to distribute fentanyl. I also believe that DICKEY is aware that there is a warrant for his arrest and is using a new telephone number to avoid detection from law enforcement.

15. In my training and experience, I have learned that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911

5

Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

16. Based on my training and experience, I know that wireless phone companies can collect E-911 Phase II data about the location of the target cell phone, including by initiating a signal to determine the location of the target cell phone on AT&T's network or with such other reference points as may be reasonably available.

17. Based on my training and experience, I know that wireless phone companies can also collect cell-site data about the target cell phone.

**AUTHORIZATION REQUEST**

18. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

19. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable

cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

20. I further request that the Court direct the AT&T to disclose to the government any information described in Attachment B that is within the possession, custody, or control of AT&T I also request that the Court direct AT&T to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with AT&T services, including by initiating a signal to determine the location of the target cell phone on AT&T network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

21. I further request that the Court authorize the government to install and operate a cell-site simulator to obtain dialing, routing, addressing, and signaling information from the target cell phone to determine the location of the target cell phone.

22. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the target cell phone outside of daytime hours. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is probable cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
Tyler D. Field
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on this 9 day of August 2017.

_____
HONORABLE KAEREN L. LITKOVITZ
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number **513-485-5462**, whose wireless service provider is AT&T, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, North Palm Beach, Florida.

2. Information about the location of the cellular telephone assigned call number **513-485-5462** that is within the possession, custody, or control of AT&T, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the target cell phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the target cell phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T, AT&T is required to disclose the Location Information to the government. In addition, AT&T must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T services, including by initiating a signal to determine the location of the target cell phone on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance. In addition the government may initiate a signal to determine the location of the target cell phone.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).